IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

RALPH S. JANVEY, *et al.*,                §
                                          §
            Plaintiffs,                   §
                                          §
v.                                        §          Civil Action No. 3:12-CV-0495-N
                                          §
ADAMS & REESE, LLP, *et al.*,             §
                                          §
            Defendants.                   §

## ORDER

This order addresses Defendants Thomas L. Frazer and Cordell Haymon's motion to

dimiss [26]; Defendants Adams & Reese LLP ("A&R"), Robert Schmidt, and James Austin's

motion to dimiss [27]; Defendant Claude Reynaud's motion to dimiss [34], and Defendant

Breazeala, Sachse & Wilson, LLP's ("BSW") motion to dimiss [30].  For the reasons that

follow, the Court grants in part and denies in part Frazer and Haymon's motion, grants in part

and denies in part Reynaud's motion, and grants BSW and A&R's motions.[1]

### I. THE RECEIVER'S THIRD-PARTY TORT ACTION

This case relates to the Securities and Exchange Commission's (the "SEC") ongoing

securities fraud action against R. Allen Stanford, his associates, and various entities under

Stanford's control (the "Stanford Defendants").  As part of that litigation, this Court assumed

exclusive jurisdiction and took possession of the "Receivership Assets" and "Receivership

Records" (collectively, the "Receivership Estate").  *See* Second Am. Order Appointing

---

[1]The Court also overrules as moot Haymon's motion to strike [45].

Receiver, July 19, 2010 [1130] (the "Receivership Order"), *SEC v. Stanford Int'l Bank*, Civil Action No. 3:09-CV-0298-N (N.D. Tex. filed Feb. 17, 2009).  The Court appointed Ralph S. Janvey to serve as Receiver of the Receivership Estate and vested him with "the full power of an equity receiver under common law as well as such powers as are enumerated" in the Receivership Order.  *Id.* at 3.  Among these enumerated powers, the Court "authorized [the Receiver] to immediately take and have complete and exclusive control, possession, and custody of the Receivership Estate and to any assets traceable to assets owned by the Receivership Estate."  *Id.* at 4.  Additionally, the Court "specifically directed and authorized [the Receiver] to . . . [c]ollect, marshal, and take custody, control, and possession of all the funds, accounts, mail, and other assets of, or in the possession or under the control of, the Receivership Estate, or assets traceable to assets owned or controlled by the Receivership Estate, wherever situated," *id.*, and to file in this Court "such actions or proceedings to impose a constructive trust, obtain possession, and/or recover judgment with respect to persons or entities who received assets or records traceable to the Receivership Estate." *Id.* at 5.

Pursuant to those powers, the Receiver, along with the Official Stanford Investors Committee ("OSIC") (collectively, "Plaintiffs") filed this suit against former directors of the Stanford Trust Company ("STC"), a Louisiana bank that at one time held $300 million in fraudulent Stanford International Bank ("SIB") certificates of deposit ("CDs"), and former attorneys that represented STC in connection with Louisiana regulatory oversight.  The

former directors in this case are Reynaud, Haymon, and Frazer[2] (collectively, the "Director Defendants").  The former attorneys in this case are Robert Schmidt and James Austin, attorneys at A&R, and Reynaud, a partner at BSW (collectively, the "Lawyer Defendants").  The Receiver also sued A&R and BSW individually.  The Receiver seeks to recover under various theories: (1) negligence against the Lawyer Defendants; (2) aiding, abetting, or participating in breaches of fiduciary duty against the Lawyer Defendants; (3) breach of fiduciary duty against the Director Defendants; (4) aiding, abetting, or participation in a fraudulent scheme against all defendants; (5) aiding, abetting, or participating in fraudulent transfers against all defendants; (6) aiding, abetting, or participating in conversion against all defendants; and (7) civil conspiracy to defraud against all defendants.

    The facts supporting the Receiver's theories are complex.  Boiled down, the Receiver alleges that the Director Defendants, the Lawyer Defendants, and BSW and A&R as employers of the Lawyer Defendants, were all in advantageous positions to discover Stanford's fraud and that they either failed to discover it or discovered it and chose not to act because they benefitted from the enterprise through their director fees or legal fees.  Central to these claims is the Lawyer Defendants' and Director Defendants' knowledge that STC was owned by Stanford Group Company ("SGC"), and that SGC, Stanford Financial Company ("SFC"), and Stanford International Bank ("SIB") were all owned by Allen Stanford himself. Even with this information, the Lawyer Defendants and the Director Defendants both

---

[2]Defendant Frazer passed away on July 4, 2012.  *See* Notice of Death of Defendant Thomas L. Frazer [36].  Because it has not been briefed by the parties, the Court declines to consider any effect this has on the Receiver's claims against Frazer.

oversaw STC's practice of investing IRA clients' funds in SIB CDs, allowed STC to receive

referral fees for that investment, and did not disclose STC's interest to its IRA clients. Both

the Director Defendants and the Lawyer Defendants argue generally that *in pari delicto* bars

the Receiver's claims, that the Receiver's claims are time-barred under Louisiana law, and

that the Receiver otherwise fails to meet the requirements of Rule 8, Rule 12(b)(6), and Rule

9(b).

## II. MOTION TO DISMISS STANDARD

When faced with a Rule 12(b)(6) motion to dismiss, a court must determine whether

the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*,

42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a

claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts

well-pleaded facts as true and construes the complaint in the light most favorable to the

plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a court does not

accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions."

*Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more

than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right

to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

### III. THE RECEIVER'S STANDING, ITS EFFECT ON IMPUTATION OF KNOWLEDGE, AND *IN PARI DELICTO*

In *Janvey v. Democratic Senatorial Campaign Committee*, the Fifth Circuit explicitly held that "a federal equity receiver has standing to assert only the claims of the entities in receivership, and not the claims of the entities' investor-creditors." 712 F.3d 185, 190 (5th Cir. 2013). This holding – that the Receiver pursues only the corporate entities' claims – has potentially wide-reaching effects. As a result of this standing, the defendants in this case argue that the Receiver's claims are barred by *in pari delicto*. The Court disagrees.

In *Democratic Senatorial Campaign*, the Fifth Circuit borrowed heavily from Judge Posner's leading opinion on receivership knowledge imputation, *Scholes v. Lehman*, 56 F.3d 750 (7th Cir. 1995). In that case, a receiver was appointed to recover the assets of another Ponzi scheme. The court discussed that receiver's standing and that standing's effect on the *in pari delicto* defense. First, the court concluded that the receiver had standing to bring its fraudulent transfer claims because the corporations themselves – the only entities on whose behalf the receiver could sue – were injured by the Ponzi scheme perpetrators' wrongful acts. The court characterized the corporations as "robotic tools" of the scheme. In perhaps the most cited portion of the opinion, Judge Posner wrote: "Put differently, the defense of *in pari delicto* loses its sting when the person who is *in pari delicto* is eliminated." Based on this opinion, the Fifth Circuit concluded, for statute of limitations purposes, that Allen Stanford's

knowledge of his own fraud did not impute to the Stanford Entities after Stanford was out of the picture.

The *Democratic Senatorial Campaign* Court reached only the issue of receivership standing and its effect of statute of limitations. The Court did not expressly address the *in pari delicto* defense and the Court also confined its analysis of *Scholes* to the fraudulent transfer context. *See Democratic Senatorial Campaign*, 712 F.3d at 190 (characterizing *Scholes* as "the leading case explaining the principles that govern a federally appointed receiver's action under a state law adopting" UFTA). Nevertheless, the Court has trouble finding any principled basis to differentiate between fraudulent knowledge for limitations purposes and fraudulent knowledge for *in pari delicto* purposes. Accordingly, the Court declines to dismiss the Receiver's claims on such grounds.

The Court recognizes that *Scholes* is not universally accepted, especially outside the fraudulent transfer context. In fact, the Seventh Circuit retreated from the *Scholes* court's *in pari delicto* analysis in *Knauer v. Jonathon Roberts Financial Group*. *See* 348 F.3d 230 (7th Cir. 2003). The court's distinction hinged on state law: *Scholes* applied Illinois law while *Knauer* applied Indiana law. *Id.* at 235. The Fifth Circuit, when applying Texas law, seems to hold the view that when a receiver is protecting innocent creditors or recovering assets for investors and creditors, the defense of *in pari delicto* should be rejected generally. *See Jones v. Wells Fargo Bank, N.A.*, 666 F.3d 955, 966 ("[I]t is well established that 'when the receiver acts to protect innocent creditors . . . he can maintain and defend actions done in fraud of creditors even though the corporation would not be permitted to do so.'" (quoting

*Akin, Gump, Strauss, Hauer and Feld, L.L.P. v. E-Court, Inc.*, 2003 WL 21025030, at *5 (Tex. App. – Austin 2003, no pet.))); *id.* at 967 ("Other courts have likewise rejected the *in pari delicto defense* in actions brought by receivers to recover assets for investors and creditors." (citing *Scholes*, 56 F.3d 750)).

Furthermore, in Texas – the *in pari delicto* law that the Court applies because no party has pointed it to any other[3] – *in pari delicto* does not necessarily bar a plaintiff's claims, even where the plaintiff is at equal fault with the defendant. Thus, even if the Fifth Circuit did not intend to hold that fraudulent acts of Stanford's "evil zombie" corporations do not impute to the corporation after the Receiver's appointment, dismissal on *in pari delicto* grounds would be inappropriate. Rather, "even in situations where the parties are found to be in pari delicto, under Texas law, 'relief will sometimes be granted if public policy demands it.'" *In re Today's Destiny, Inc.*, 388 B.R. 737, 748 (Bankr. S.D. Tex. 2008) (quoting *Lewis v. Davis*, 199 S.W.2d 146, 151 (Tex. 1947)). In other words, whether to apply *in pari delicto* is typically depends on what best serves public policy. Thus, although *in pari delicto* could apply to the Receiver in some jurisdictions, it does not necessarily bar his claims in Texas.

---

[3]The Defendants argue that Louisiana law applies to the case generally . Choice of law issues arise on a claim-by-claim, not case-by-case basis. Further, in any event, the Louisiana Supreme Court rejected a claim that *in pari delicto* barred a receiver's claim because he stood in the shoes of an entity that acted wrongfully. Although the Louisiana court was applying Texas law, it did not cite any Texas case or hinge its rationale on any Texas jurisprudence whatsoever. Accordingly, even under Louisiana law, *in pari delicto* would not necessarily bar the Receiver's claims. *See Wooley v. Lucksinger*, 61 So.3d 507, 606 (La. 2011).

The parties have not briefed any public policy rationales, and thus the Court declines to dismiss the Receiver's claims on *in pari delicto* grounds.[4]

## IV. THE RECEIVER PLEADS THAT HIS CLAIMS BELONG TO THE RECEIVERSHIP ESTATE

As a corollary to the Fifth Circuit's conclusion that the Receiver has standing only on behalf of the receivership entities, the Receiver may pursue only claims that belong to the receivership estate. Whether a claim belongs to the estate depends on whether, under state law, the receivership entity could have raised the claim. *See In re Seven Seas Petroleum, Inc.*, 522 F.3d 575, (5th Cir. 2008) (presenting similar analysis in bankruptcy context). Courts look to the nature of the injury for which relief is sought and consider the relationship between the entity or entities in receivership and the injury. *Id.* If a cause of action alleges indirect harm – i.e., injury derivative from the debtor – the debtor could have raised the claim and thus the claim belongs to the estate. *In re Educators Grp. Health Trust*, 25 F.3d 1281, 1284 (5th Cir. 1994). Otherwise, if the cause of action does not allege harm to the debtor, then it is not part of the estate. *Id.*

The Receiver pleads that either the Director Defendants, Lawyer Defendants, or both caused harm directly to a Stanford Entity – though the Receiver does not state which one – and he does not plead injury to any particular creditor. Essentially, according to the Receiver, because the Lawyer Defendants and the Director Defendants did not stop Stanford

---

[4]The Court notes that this public policy calculus might differ based on the particular claim pursued. *Cf. Knauer*, 348 F.3d at 237-38 (balancing equities to conclude that *in pari delicto* barred receiver's claim because defendants' assistance in scheme was "quite minor," defendants were not directly involved, and defendants did not benefit).

from controlling his entities to perpetuate his fraud and use Stanford Entities funds for his own lavish lifestyle, money was improperly diverted from the entities, causing injury to those entities.   This harmed the Stanford Entities' ability to repay their creditor-investors. Accordingly, for purposes of this motion, the Court finds that the Receiver has alleged claims properly belonging to the Receivership estate.

## V.   THE RECEIVER'S BREACH OF FIDUCIARY DUTY CLAIMS AGAINST DIRECTOR DEFENDANTS

### A.   Louisiana Law Applies to STC's "Internal Affairs"

The Court applies Texas's choice of law rules.   Under these rules, the choice of law analysis applies to each claim or issue individually.   *See Tobin v. AMR Corp.*, 637 F. Supp. 2d 406, 412 n.11 (N.D. Tex. 2009) (citing *Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 204 (Tex. 2000).   Texas follows the "internal affairs doctrine," which provides that "matters relating to the internal workings of corporations and the duties of directors and shareholders are governed by the laws of the state of incorporation."   *12261 Fondren, LLC v. Riverbak Realty GP, LLC*, 2010 WL 1741071, at*3 (S.D. Tex. 2012) (citing *Hollis v. Hill*, 232 F.3d 460, 465 (5th Cir. 2000)); *see also* TEX. BUS. ORG. CODE § 1.102 (codifying the internal affairs doctrine).   Breaches of fiduciary are internal affairs.   *See, e.g.*, *Fondren, LLC*, 2010 WL 1741071, at *3.   STC was incorporated in Louisiana.   Thus, Louisiana law applies to the Receiver's breach of fiduciary duty claims against the STC directors.

### B.   Texas's Statute of Limitations Applies

Because Louisiana law governs the internal affairs of the corporation, the Director Defendants argue that Louisiana's peremptive limitations apply to bar the Receiver's claims.

Texas would apply Louisiana substantive law, but under Texas rules, Texas limitations generally apply regardless of what substantive law applies because in Texas limitations are procedural rules.  *E.g.*, *Cox v. McDonnell-Douglas Corp.*, 665 F.2d 566, 571 (5th Cir. 1982).  The exceptions to this general rule are statutes of repose, which although similar to limitations, create a substantive right.  *Methodist Healthcare Sys. San Antonio v. Rankin*, 307 S.W.3d 283, 286 (Tex. 2010) ("[W]hile statutes of limitations operate procedurally to bar the enforcement of a right, a statute of repose takes away the right altogether, creating a substantive right to be free of liability after a specified time." (quoting *Galbraith Engn'ring Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 866 (Tex. 2009))).  The Director Defendants recognize that Texas views limitations as procedural rules.  But the Director Defendants argue that Louisiana's limitation period is a peremptive statute, that peremptive statutes are substantive – like Texas's statutes of repose – and that accordingly that peremptive statute should apply to the Receiver's claims against the directors.

The relevant statute for the Receiver's claims against the STC directors in Louisiana is section 1502 of Title 12 of the Louisiana Revised Statute.  That provision provides that a plaintiff may not bring a claim against any "officer, director, shareholder, member, manager, general partner, limited partner, managing partner, or other person similarly situated" either after one or two years – depending on the claim – "from the date the alleged act or omission is discovered or should have been discovered."  LA. REV. STAT. § 12:1502.  More pertinently to the Director Defendants' argument, the statute further provides that "in no event shall an action covered by the provisions of this Subsection be brought more than three years from

the date of the alleged act or omission." *Id.* § 12:1502(c)-(d).  According to the Director Defendants, the Receiver seeks to recover for acts occurring over three years ago, and Louisiana law gives them a substantive right to be free from liability after those three years.

The Court recognizes that the plain language of this three-year limitation *appears* peremptive.  But the Louisiana Supreme Court held that a similar three-year cut-off period regarding medical malpractice actions was merely prescriptive.  *Borel v. Young*, 989 So. 2d 42, 64 (La. 2007).  Based on this case, at least two Louisiana intermediate courts have held that section 1502, too, contains two prescriptive limitations period.  *See Robert v. Robert Mgmt Co., LLC*, 82 So.3d 396; *Wooley v. Lucksinger*, 14 So. 3d 311,  462 (La. App. 1st Cir. 2008).  *But see Suhren v. Gibert*, 55 So. 3d 941, 947 (La. App. 4th Cir. 2011) (agreeing with *Wooley* decision, but holding that continuous tort doctrine may not prescribe action under section 1502).  Because the statute is prescriptive, it is not "a period of time fixed by law for the existence of a right." LA. REV. STAT. § 9:5606(A).  Under Texas choice of law rules, it is thus not a substantive right, but a procedural one, and Texas courts would apply their own statute of limitations.

## C.  The Receiver's Claims Are Not Necessarily Time-Barred

No Director Defendant argues that Texas limitations periods also bar the Receiver's claims against them.  But even if they did, the Court notes that the Fifth Circuit indicated in *Democratic Senatorial Campaign* that the Receiver could not and did not know any facts giving rise to any of his claims prior to his appointment and a reasonable time afterward to discover any claims.  712 F.3d at 193 ("Because the Stanford corporations were the robotic

tools of Stanford's Ponzi scheme, knowledge of the fraud could not be imputed to them while they were under Stanford's coercion."). The Fifth Circuit held that none of the Receiver's claims could have arisen before August 27, 2009. *Id.* Further, in Texas, it is a defendant's burden to show conclusively that limitations applies. *Johnston v. Crook*, 93 S.W.3d 263, 269 (Tex. App. – Houston [14th Dist.] 2002, pet. denied) (citing *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999)). Since the Directors' limitations arguments hinge only on Louisiana law, and the Court has determined that Texas limitations apply to the Receiver's claims against the Director Defendants, limitations do not bar the Receiver's Directors claims against them.

### D. The Receiver States a Breach of Fiduciary Duty Claim Against the Director Defendants

As the Court previously noted, Louisiana law governs the Receiver's breach of fiduciary duty claims against the Director Defendants. Louisiana law states that "a director or officer of a bank or bank holding company shall not be held personally liable to the corporation or the shareholders thereof for monetary damages unless the director or officer acted in a grossly negligent manner . . . or engaged in conduct which demonstrates a greater disregard of the duty of care than gross negligence, including intentional tortious conduct or intentional breach of his duty of loyalty." LA. REV. STAT. § 6:786(b). Gross negligence is defined as "a reckless disregard of, or a carelessness amounting to indifference to the best interests of the corporation or the shareholders thereof, and involves a substantial deviation below the standard of care expected to be maintained by a reasonably careful person under the circumstances." *Id.* § 6:703(9). Bank directors and officers in Louisiana are protected

from liability when "relying in good faith upon the records of the bank or bank holding company, and upon such information, opinions, reports, or statement presented to him, the bank or bank holding company, the board of directors, or any committee thereof." *Id.* § 6:786(c).

Here, the Receiver alleges facts sufficient to state a gross negligence claim against the Director Defendants.  The Receiver offers evidence that in 2001, the Louisiana Office of Financial Institutions indicated that the STC directors met too infrequently and expressed concerns that the directors were not actively involved in STC's affairs.  Am. Compl ¶ 112. He alleges that the directors were told that they could not receive a fee for purchasing SIB CDs, that they were aware that STC was receiving such fees, but the Board of Directors did nothing.  *Id.* ¶¶ 117, 133-34.  The Receiver alleges that STC and SGC had a cross-referral agreement with SGC, whereby STC received commissions when their IRA customers purchased SIB CDs.  *Id.* ¶¶ 81-82.  The Receiver also alleges that STC actually made or assisted its customers in making its IRA investment decisions.  *Id.* ¶ 82.  The Receiver further alleges that the directors watched as STC increased its SIB holdings from $35 million in 2003 to over $300 million in 2009, without any due diligence on their predominant holding – the SIB CD.  *Id.* ¶ 122. The first time any director even questioned the valuation of SIB CD's was in 2008.  *Id.* ¶ 151.  Finally, the Receiver alleges that the Directors were aware of serious documentation deficiencies that went unresolved: not one IRA account file contained disclosure files considered necessary under STC's internal procedures.  *Id.*  ¶ 160.  These facts as alleged are sufficient to state a breach of fiduciary claim.

The Director Defendants point to two different statutes that they claim prohibit the Receiver's claim as alleged.  First, the Director Defendants argue that they are immunized from liability for any actions taken in good-faith reliance on Stanford documents or good-faith reliance on outside counsel.  But the facts as alleged raise some question regarding the Director Defendants' good faith in relying on counsel.  LA. REV. STAT. § 6:786(c).  The complaint alleges that the directors received multiple legal opinions, some favorable to their desired position allowing for the purchase of SIB CDs and some opinions concluding that doing so would breach their fiduciary duties to their customers.  Further, the Receiver alleges facts indicating that attorneys were sought not for their legal expertise but for their political connections, another fact which could affect the good-faith analysis.  Accordingly, the good-faith reliance statute does not bar the Receiver's claims on the face of the pleadings.

The Director Defendants also point out that Louisiana law provides that financial institutions do not implicitly owe fiduciary duties to their customers.  *See* LA. REV. STAT. § 6:1124.  But this conflates the directors' fiduciary duties to the corporation and its shareholders with the corporation's fiduciary duties to its customers.  The directors are correct that, if STC investors, as investors, were seeking to recover from STC, those investors would need to establish that STC owed them a fiduciary duty via a written fiduciary relationship.  But a board of directors always owes the corporation for which it sits a fiduciary duty.  *See* LA. REV. STAT. § 12:91 ("Officers and directors shall be deemed to stand in a fiduciary relation to the corporation and its shareholders, and shall discharge the duties of their respective positions in good faith, and with that dilgence, care, judgment and skill

which ordinarily prudent men would exercise under similar circumstances."). Thus, the Directors owed a fiduciary duty to STC and SGC, its sole shareholder. Accordingly, the Court declines to dismiss the Receiver's breach of fiduciary duty claim against the Director Defendants.

## VI. THE COURT DISMISSES THE RECEIVER'S AIDING AND ABETTING CLAIMS AGAINST THE DIRECTOR DEFENDANTS

In the Receiver's responses to the various motions to dismiss, he brings some clarity to his aiding and abetting claims. Specifically, the Receiver appears to consider his aiding and abetting fraud, aiding and abetting fraudulent transfer, and aiding and conversion as all derivative of his breach of fiduciary duty and aiding and abetting breaches of fiduciary duty claims. Specifically, the Receiver states that

> Defendants, as a result of their knowledge of STC's illegal acts and failures described above [(e.g., STC's conflicts of interest, failure to value the SIB CD's, collateralize SIB CD holdings, and maintain required documentation)] knew that STC's own Officers and Directors were breaching their fiduciary duties to STC by directing or failing to stop the company's illegal operations and by the allowing STC to be dominated, controlled and exploited by SGC, SIBL, and Stanford Financial generally, such that STC did not further its own interests but rather served the interest of the Stanford Ponzi scheme to its own detriment.

Pl.'s Joint Resp. Def. Haymon & Frazer's Mot. Dismiss 19. This characterization is one of a breach of fiduciary duty by the Director Defendants, not one of aiding and abetting fraud, fraudulent transfer, or conversion.

That the Receiver's aiding and abetting claims are really derivative of his breach of fiduciary duty claims is further shown by the facts that the Receiver points to in an attempt to save his aiding and abetting claims for dismissal: (1) the Directors were required to ensure

STC's compliance with applicable laws and regulations; (2) the Directors allowed STC to invest IRA funds in SIB CDs even after they were told it conflicted with fiduciary obligations to account holders; (3) the Directors continued operating despite red flags; and (4) the Directors knowingly and recklessly participating in the ongoing breaches of fiduciary duties by STC's officers.  Further, in defending his aiding and abetting fraudulent transfer claims, the Receiver argues that the Court should not dismiss the claims based on the general rule that only recipients of fraudulent transfers may be sued for their recovery because the Receiver's claims are really based on the defendants' breaches of fiduciary duties.  *Id.* at 20. Thus, the Receiver effectively does not distinguish any of his aiding and abetting claims, but rather defends them all with one fell swoop.  Based on this, the Court concludes that although the Receiver brings separate claims – one for aiding and abetting breach of fiduciary duty, a fraudulent enterprise, fraudulent transfer, and conversion – the Receiver, at least against the Director Defendants, is seeking to recover on only fiduciary duty grounds.  To the extent the Receiver seeks to recover based on some other aiding and abetting theory, the Receiver's complaint does not provide the Director Defendants with adequate notice to prepare their defense.  Accordingly, the Court dismisses the Receiver's aiding and abetting participation in a fraudulent scheme, aiding and abetting fraudulent transfer, and aiding and abetting conversion claims against the Director Defendants.[5]

---

[5]The Receiver does not appear to bring aiding and abetting breaches of fiduciary duty claims against the Director Defendants.

### VII.  THE COURT DECLINES TO DISMISS THE RECEIVER'S CONSPIRACY CLAIM AGAINST THE DIRECTOR DEFENDANTS

The Court applies Texas law to the Receiver's conspiracy claim because the Director Defendants have not established that Louisiana law applies because either because Louisiana law conflicts with Texas law or because Louisiana law has the most specific relationship with the civil conspiracy claim.  *See Weatherly v. Deloitte & Touche*, 905 S.W.2d 642, 650 (Tex. App. – Houston [14th Dist.] 1995, writ dism'd w.o.j.) (holding that burden is on party asserting application of foreign law to show existence of true conflict and demonstrate which law should apply).  Under Texas law, conspiracy requires: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, over acts; and (5) damages as a proximate result.  *Tri v. J.T.T.*, 162 S.W.3d 522, 556 (Tex. 2005).  The agreement may be tacit and can be alleged and proven by circumstantial evidence.  *See Bradt v. Sebek*, 14 S.W.3d 756, 766 (Tex. App. – Houston [1st Dist.] 2000, pet. denied).  However, there is no civil conspiracy to be negligent, *J.T.T.*, 162 S.W.3d at 556, and "[o]ne cannot agree . . . to commit a wrong about which he has no knowledge." *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 614 (Tex. 1996).

The Receiver's civil conspiracy claim is for conspiracy to commit fraud, breaches of fiduciary duty, fraudulent transfers, and conversion.  *See* Am. Compl. ¶ 180 (alleging that Defendants had meeting of minds "to conceal the fraudulent nature of STC's, SGC's, and Stanford Financial's activities by evading regulatory scrutiny from Louisiana's OFI").  Rule 9(b) applies to conspiracy to commit fraud claims, and thus the Receiver is required to plead

those claims with particularity.  *See In re Enron Corp. Securities, Derivative and ERISA Litig.*, 623 F. Supp. 2d. 798, 811 n.11 (S.D. Tex. 2009).

Essentially, the Director Defendants argue that the Receiver fails to plead a meeting of the minds or any particular facts about the Director Defendants individually that would serve to put them on notice regarding the Receiver's conspiracy claim.  But the Receiver goes into some detail about Stanford's fraudulent enterprise generally.  And he alleges that the Director Defendants were aware of a number of red flags about the enterprise,[6] that the Director Defendants profited from the enterprise by way of directors' fees, that the Director Defendants came in contact with the directors for SFC and Stanford himself regularly, but that the Director Defendants did nothing until 2008 in the face of more regulatory scrutiny. Given the length of time the Director Defendants were involved in STC, and given what the Receiver alleges that they knew about Stanford's enterprise generally, the Court concludes that the Receiver pleads sufficient facts to imply a meeting of the minds.  Thus, the Court denies the Director Defendants' motion to dismiss the Receiver's conspiracy claim.

## VIII. THE RECEIVER'S CLAIMS AGAINST LAWYER DEFENDANTS

### A. *Choice of Law*

Under a typical choice of law analysis, absent a statutory or contractual directive, the Court must first determine whether the apparent conflict of laws is a true conflict, a false

---

[6]For example,  STC, SGC, and SIB's "incestuous" relationship; STC's self-dealing in SIB CDs; that SFC and STC sought attorneys based on political connections with regulators; that STC was under repeated investigation; and that other Stanford enterprises had been under investigation.

conflict, or no conflict at all. *See In re AdvancePCS Health* L.P., 172 S.w.3d 603, 606 (Tex. 2005) (orig. proceeding) ("[A]s there appears to be no conflict of laws, there can be no harm in applying Texas law." (internal quotation marks omitted)); *see Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 422 (Tex. 1984) (finding "false conflict" because only Texas had interest in applying its law).[7] If no conflict exists, the Court need not conduct a choice of law analysis.

### B. *Texas Law Conflicts with Louisiana Law*

The Court finds that as to the Receiver's claims against the Lawyer Defendants, Texas and Louisiana law conflicts. Unlike Louisiana's limitations period regarding claims against corporate fiduciaries, Louisiana's malpractice three-year limitation period is peremptive. *See Teague v. St. Paul Fire & Marine Ins. Co.*, 974 So. 2d 1266, 1274 (La. 2008) (noting that all limitations in the legal malpractice statute are peremptive). As such, under Texas choice of law rules, the limitations period for attorney malpractice is a substantive rule of law. *See Rankin*, 307 S.W.3d at 286 (noting substantive nature of repose statutes). Thus, because Louisiana grants a three-year substantive right to be free from liability from the date a legal malpractice claim accrues, and Texas does not have such a limitation, Texas and Louisiana law conflict.

---

[7]The Court applies Texas principles because – although there is some issue as to whether the federal "independent judgment" test or Texas's "most significant relationship" test – the Fifth Circuit has held the two are essentially synonymous. *In re Mirant Corp.*, 675 F.3d 530, 536 (5th Cir. 2012)

### C.  Louisiana Law Applies to the Receiver's
### Claims Against the Lawyer Defendants

In tort cases, Texas applies the "most significant relationship" test, which compels the Court to weigh the factors set forth in section 145 and section 6 of the Restatement (Second) of Conflicts of Laws.  *Gutierrez*, 583 S.W.2d at 318.  The Court looks to section 145 first because the section 145 contacts "provide the backdrop for the section 6 analysis." *Mirant Corp.*, 675 F.3d at 537.

Section 145 advises the Court to look to: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) the place where the relationship, if any, between the parties was centered.  RESTATEMENT (SECOND) OF CONFLICTS OF LAWS §145 (1971).

The section 6 factors are broader and advise the Court to look to: (1) the relevant policies of the forum; (2) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (3) the basic policies underlying the particular field of law; (4) the protection of justified expectations; (5) certainty, predictability, and uniformity of result; (6) ease in the determination and application of the law to be applied; and (7) the needs of the interstate and international systems.  RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 6 (1971).

According to the Receiver, the injury here is funds that should have been held in STC when the Receiver was appointed that were instead diverted elsewhere in the Stanford network.  Thus, the injury occurred in Louisiana.  The place where the injury causing

conduct occurred is Louisiana: Louisiana lawyers gave advice to STC in Louisiana, and their failure to disclose the red flags surrounding STC also occurred in that state.   The Lawyer Defendants' relationship with the Stanford Entities, even though those entities were headquartered in Texas, was also in Louisiana.   All of the Lawyer Defendants' work was done in Louisiana.   Based on the facts in the pleading[8] – even considering that STC coordinated with other Stanford Entities in Texas and elsewhere, and the Court's previous holdings that the entire Stanford enterprise was centered in Texas – the Court finds that, based on the facts as alleged in the complaint, Louisiana has the most significant relationship to the Receiver's claims against the Lawyer Defendants.   All of the Receiver's allegations against the Lawyer Defendants involve Louisiana lawyers giving legal advice to – or failing to blow the whistle on – a Louisiana company.   Accordingly, Louisiana has the most significant relationship to the Receiver's claims against the Lawyer Defendants.

### D.   The Receiver's Claims Against the Lawyer Defendants Are Perempted

"Peremption is a period of time fixed by law for the existence of a right.   Unless timely exercised, the right is extinguished upon the expiration of the peremptive period." La. Civ. Code art. 3458.   Peremptive periods may not be renounced, interrupted, or suspended. La. Civ. Code art. 3461.   Thus, three years after the alleged act, omission, or neglect occurs in the course of legal representation, Louisiana law extinguishes the claim.   LA. REV. STAT.

---

[8]The Receiver argues that choice of law is a question of fact.   But it is actually a mixed question of law and fact and the Court makes it choice of law determination from the facts as alleged in the pleadings.   *See Cesna Aircraft Co.*, 665 S.W.2d at 421 ("Once [choice of law] contacts are established, the question of which state's law will apply is one of law.").

§ 9:5605.  Here, any alleged acts by the Lawyer Defendants occurred three years before the Receiver filed this complaint.  And although the Receiver argues that equitable tolling would operate to relate this complaint back to another substantially identical complaint filed in 2011, the Louisiana Supreme Court has specifically held that even relation back does not affect the three year preemptive period.  *See Naghi v. Brener*, 17 So. 3d 919, at 925-26 (La. 2009).

The Court notes that the three year peremptive period against attorneys does not apply to cases based on fraud.  Fraud is defined in Louisiana as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other."  La. Civ. Code art. 1953.  But the Receiver is suing only on behalf of the Stanford Entities.  Thus, for the Receiver's claims to be saved from preemption, the Lawyer Defendants would need to defraud a Stanford Entity, not the OFI, or any Stanford investor.  The facts alleged in the Receiver's complaint, however, do not indicate any fraud on the behalf of the Lawyer Defendants to the entities themselves.  Rather, the Receiver alleges that the Lawyer Defendants misrepresented facts about the Stanford Enterprise to the Louisiana OFI and to STC auditors, or failed to blow the whistle on the whole enterprise, harming the investor-creditors.  Assuming the Receiver could meet the other elements of fraud, the Receiver fails to allege facts showing that any Stanford Entity was defrauded by the Lawyer Defendants such that its claims against them are claims based on fraud for purposes of the legal malpractice preemption statute.  Accordingly, the Court dismisses the Receiver's negligence claim against the Lawyer

Defendants, breach of fiduciary duty claim against the Lawyer Defendants, aiding and abetting breach of fiduciary duty claim against the Lawyer Defendants, aiding and abetting fraud claim against the Lawyer Defendants, aiding and abetting fraudulent transfer claim against the Lawyer Defendants, aiding and abetting conversion claim against the Lawyer Defendants, conspiracy claim against the Lawyer Defendants, and negligent supervision claim against BSW and A&R.[9]

## CONCLUSION

For the reasons stated above, the Court dismisses the Receiver's claims against the Lawyer Defendants except for any respondeat superior claim against BSW for Reynaud's actions as an STC director.[10]  The Court dismisses the Receiver's aiding and abetting fraud, aiding and abetting fraudulent transfer, and aiding and abetting conversion against the Director Defendants.  The Receiver's breach of fiduciary duty and conspiracy claims against the Director Defendants remain pending.  The Court grants the Receiver leave to replead within thirty days of the date of this Order.

---

[9]The Receiver seeks to recover on a negligent supervision theory against BSW and A&R for failure to supervise their lawyers adequately.  These claims, however, relate solely to those lawyers' actions in representing the Stanford Entities.

[10]No party moved to dismiss this claim.

Signed September 11, 2013.

David C. Godbey
United States District Judge