IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RALPH S. JANVEY, IN HIS CAPACITY AS COURT-APPOINTED RECEIVER FOR THE STANFORD RECEIVERSHIP ESTATE, AND THE OFFICIAL STANFORD INVESTORS COMMITTEE, <br><br>Plaintiffs, <br><br>v. <br><br>ADAMS & REESE, LLP; BREAZEALE, SACHSE & WILSON, LLP; ROBERT SCHMIDT; JAMES AUSTIN; CLAUDE F. REYNAUD, JR.; CORDELL HAYMON; and THOMAS FRAZER, <br><br>Defendants. | § § § § § § § § § § § § § § § § § § | CASE NO. 3:12-CV-495-B |

### DEFENDANT CORDELL HAYMON'S MOTION FOR LEAVE TO DESIGNATE RESPONSIBLE THIRD PARTIES AND BRIEF IN SUPPORT[1]

Defendant Cordell Haymon moves for leave to designate certain persons and entities listed below as Responsible Third Parties pursuant to Texas Civil Practices and Remedies Code § 33.004 in connection with the claim of breach of fiduciary duty asserted by Plaintiffs Ralph Janvey, as Court-Appointed Receiver for the Stanford Receivership Estate (the "Receiver"), and The Official Stanford Investors Committee (the "Committee"). In filing the instant motion, Mr. Haymon is not waiving, and does not intend to waive, his position that Louisiana substantive law applies to all of Plaintiff's claims in this case.

---

[1] Pursuant to Local Rule 5.1(c), Mr. Haymon has included his motion and brief in a single document.

**DEFENDANT CORDELL HAYMON'S MOTION FOR LEAVE TO DESIGNATE RESPONSIBLE THIRD PARTIES AND BRIEF IN SUPPORT – Page 1**

## LEGAL STANDARD

Texas Civil Practices and Remedies Code § 33.004 provides that "[a] defendant may seek to designate a person as a responsible third party by filing a motion for leave to designate that person as a responsible third party." Chapter 33 applies to tort claims, including claims for breach of fiduciary duty.[2] Section 33.003 requires, in relevant part, that the trier of fact determine the percentage of responsibility for each responsible third party who "caus[ed] or contribut[ed] to cause in any way the harm for which recovery of damages is sought." Tex. Civ. Prac. & Rem. Code §§ 33.003(a)(1), 33.0011(6) (emphasis added). To satisfy the requirements for designation as a responsible third party, "the proposed designee must only have contributed to causing *in any way* the harm for which the plaintiff seeks recovery." *Access Mediquip L.L.C. v. UnitedHealth Grp. Inc.*, Civ. No. H-09-2965, 2010 WL 4702340, at *2 (S.D. Tex. Nov. 12, 2010) (emphasis in original) (citing *Flanagan v. Wells Fargo Fin. Nat'l Bank*, No. 4:09-cv-44, 2009 WL 2143439, at *3 (E.D. Tex. July 14, 2009)).[3]

This court has applied § 33.004 in diversity cases and in cases in which its subject matter jurisdiction was based on a federal question. *See, e.g., Davis v. Dallas Cnty., Tex.*, 2007 WL 2301585, at *2 (N.D. Tex. Aug. 10, 2007) (federal question*); Estate of Dumas v. Walgreens Co.*, 2006 WL 3635426, at *1 (N.D. Tex. Dec. 6, 2006) (diversity).

---

[2] *See Villareal v. Wells Fargo Broker Servs., LLC*, 315 S.W.3d 109, 126-27 (Tex. App. – Houston [1st Dist.] 2010, no pet.) (applying § 33.004 to breach of fiduciary duty claim); *Douglas v. Aztec Petroleum Corp.*, 695 S.W.2d 312, 318 (Tex. App. – Tyler 1985, no writ) ("Breach of fiduciary duty is a tort.").

[3] Plaintiffs likely will argue that this Motion should be denied because Plaintiffs seek damages only for the injury done to Stanford Trust Company (Louisiana) ("STC") by its directors, and that they are not suing for that injury in the many other cases they have brought against the responsible third parties named in this Motion. That argument has no merit. Whether or not Plaintiffs seek to recover for STC's injuries in other lawsuits is irrelevant to the present Motion; what matters is whether any of the named responsible third parties caused or contributed in any way to STC's injuries. Inasmuch as STC's injuries were the result of the Stanford Ponzi scheme and the collapse of the Stanford business empire, all of those who caused or contributed to that scheme and/or its collapse are properly designated as responsible third parties.

Under Tex. Civ. Prac. & Rem. Code § 33.004(f) and (g), the Court must grant leave to designate responsible third parties unless another party timely objects and establishes (1) that the defendant did not plead sufficient facts concerning the alleged responsibility of the person to satisfy the pleading requirements, and (2) that, having been granted leave to replead, the defendant fails to plead sufficient facts concerning the alleged responsibility of the person to satisfy the pleading requirements.

In the present case, it is *Plaintiffs' own pleadings* – in this action and in other related cases pending before this Court – that establish that other parties are responsible for the damages Plaintiffs allege.[4] The Fifth Circuit has repeatedly held that "factual assertions in pleadings are ... judicial admissions *conclusively* binding on the party that made them." *Campbell v. Sonat Offshore Drilling, Inc.*, 979 F.2d 1115, 1119 (5th Cir. 1992) (emphasis in original), *quoting Davis v. A.G. Edwards & Sons, Inc.,* 823 F.2d 105, 108 (5th Cir. 1987), *in turn quoting White v. ARCO/Polymers, Inc.,* 720 F.2d 1391, 1396 (5th Cir. 1983). Furthermore, pleadings by the Committee and the Receiver in other cases are evidentiary admissions which may be used in this case. *See Muhs v. River Rats, Inc.*, 586 F.Supp.2d 1364, 1378 (S.D. Ga. 2008) (quoting MCCORMICK ON EVIDENCE § 257 at p. 186 (6th ed. 2006); *see also Williams V. Union Carbide Corp.*, 790 F.2d 552, 556 (6th Cir.) ("Pleadings in a prior case may be used as evidentiary admissions."), *cert. denied*, 479 U.S. 992 (1986).

## GROUNDS FOR MOTION

**I.    PLAINTIFFS' CLAIMS AGAINST MR. HAYMON**

Plaintiffs allege that Mr. Haymon, a former director of Stanford Trust Company (Louisiana) ("STC"), conspired with R. Allen Stanford and others to sustain and expand the

---

[4] In other words, in order to defeat this Motion, Plaintiffs will have to prove that their own pleadings in this and related cases are insufficient to state a claim upon which relief can be granted.

**DEFENDANT CORDELL HAYMON'S MOTION FOR LEAVE TO DESIGNATE RESPONSIBLE THIRD PARTIES AND BRIEF IN SUPPORT – Page 3**

infamous Stanford Ponzi scheme and defraud investors who purchased some $1.8 billion worth of certificates of deposit issued by the Antigua-based Stanford International Bank, Ltd. (the "SIBL CDs"). According to the First Amended Complaint, Mr. Haymon conspired with the Stanford Ponzi schemers "regarding the need to conceal the true nature and activities of STC, SGC [Stanford Group Company], and Stanford Financial generally, and to avoid regulatory scrutiny." Plaintiffs' First Amended Complaint ("Complaint" or "FAC") ¶ 176. In addition, the Committee purports to assert causes of action against Mr. Haymon based on the activities of the Stanford Group Company ("SGC") and Stanford Financial. *See, e.g.*, FAC ¶ 174, 176.

In particular, Plaintiffs allege that Mr. Haymon breached his fiduciary duties to STC, as follows:

> Specifically, the Director Defendants [of which Mr. Haymon is a member] breached their fiduciary duties to STC by continuously ignoring the numerous red flags discussed in this Complaint and continuing to provide services that furthered the Stanford Ponzi scheme, despite the Director Defendants' extensive knowledge of the fraudulent illicit operations at STC, SGC, and Stanford Financial generally, and STC's illicit business relationship with SIBL and SGC. By ignoring these red flags and continuing to provide such services acting with little or no knowledge of Stanford Financial or SIBL, the Director Defendants allowed STC to be dominated, controlled and exploited by SGC, SIBL, and Stanford Financial generally, such that STC did not further its own interests but rather served the interests of the Stanford Ponzi scheme to its own detriment.

FAC ¶ 173.

In addition, Plaintiffs allege that Mr. Haymon had a meeting of the minds with R. Allen Stanford, Jim Davis, Leroy King, Laura Pedergest-Holt, and others to sustain and expand the Stanford Ponzi scheme and defraud investors who purchased some $1.8 billion worth of SIBL CDs.

> Defendants conspired with Allen Stanford, his co-conspirators and the directors and officers of STC, SGC, and Stanford Financial generally to commit the wrongful conduct described herein, including breaches of fiduciary duties, fraudulent transfers, and conversion. Defendants are responsible for all wrongdoing done by each of the other members of the conspiracy, including

> Allen Stanford, Jim Davis, Mauricio Alvarado, Laura Pendergest-Holt, Rebecca Hamric, Jane Bates, Lena Stinson, Bernie Young, SIBL's president Juan Rodriguez Tolentino, Leroy King, and others, in furtherance of the unlawful conspiracy and enterprise. In particular, Defendants are responsible for Allen Stanford's and his co-conspirators' misappropriation of billions of dollars in assets from Stanford Financial companies, and therefore from the Committee as assignee from the Receiver, including at least $300 million in funds that STC should have been holding in SIBL CDs that were improperly diverted and subsequently misappropriated from Stanford Financial companies.

FAC ¶ 179. The Plaintiffs also allege that Mr. Haymon joined a conspiracy "regarding the need to conceal the true nature and activities of STC, SGC, and Stanford Financial generally, and to avoid regulatory scrutiny." FAC ¶ 180.

## II.   RESPONSIBLE THIRD PARTIES

1. On March 8, 2012, R. Allen Stanford was found guilty on multiple counts[5] of mail and wire fraud relating to the Ponzi scheme made the basis of this lawsuit. *See United States of America v. Stanford, et al.*, No. 4:09-cr-00342 (S.D. Tex.), ECF No. 824. On June 14, 2012, Stanford was sentenced to 1,320 months in prison for his leading role in the Ponzi scheme. *See id*. ECF No. 877. In the present lawsuit, Plaintiffs describe Stanford's fraud as follows:

> In reality, Stanford Financial was a massive, worldwide Ponzi scheme. The gist of the fraud was actually quite simple. Stanford Financial sold SIBL CDs through a flashy marketing campaign that was designed to trick investors into believing they were purchasing safe, secure, insured, and highly liquid CDs, which were purportedly regulated in the United States because SGC was a U.S. licensed broker/dealer. At the same time, Stanford Financial maintained a veil of secrecy over SIBL's purported investment portfolio and its use of CD investors' money. Thus, Stanford Financial went to great lengths to keep prying eyes, particularly regulatory eyes, away from SIBL's purported operations and assets.

FAC ¶ 26.

> Allen Stanford and his Ponzi insiders misappropriated billions of dollars in assets from Stanford Financial companies to: (i) support the lavish lifestyles of Allen Stanford and his Ponzi insiders; (ii) issue bogus, unsecured personal "loans" to Allen Stanford; (iii) capitalize other entities wholly owned by Allen Stanford; and

---

[5] Specifically, Stanford was found guilty on Counts 1, 12s, 13s, 14s, 19, 1s, 2, 20, 21, 2s, 3-8, 3s-6s, 7s-11s, and 9-18 of the Superseding Indictment against him.

>  (iv) invest in speculative, illiquid, and high-risk ventures, including private equity and real estate development projects in Antigua and elsewhere in the Caribbean.

FAC ¶ 67. In addition, Plaintiffs plead that Mr. Haymon is "responsible for all wrongdoing done by" Allen Stanford. FAC ¶ 179. Accordingly, R. Allen Stanford should be designated as a responsible third party in this lawsuit.

> 2. On June 21, 2012, Laura Pendergest-Holt pleaded guilty to one count Obstruction of an Investigation of the Securities and Exchange Commission relating to the Ponzi scheme made the basis of this lawsuit. *See United States of America v. Pendergest-Holt*, No. 4:09-cr-00342-2 (S.D. Tex.), ECF No. 890. On September 13, 2012, Pendergest-Holt was sentenced to 36 months in prison for her role in the Stanford Ponzi scheme. *See id*. ECF No. 1024. In this case, Plaintiffs plead that Mr. Haymon is "responsible for all wrongdoing done by" Laura Pendergest-Holt. FAC ¶ 179. Accordingly, Laura Pendergest-Holt should be designated as a responsible third party in this lawsuit.

> 3. On November 19, 2012, Gilbert Lopez and Mark Kuhrt were found guilty on multiple counts of mail and wire fraud relating to the Ponzi scheme made the basis of this lawsuit.[6] *See United States of America v. Lopez*, No. 4:09-cr-00342-3 (S.D. Tex.), ECF No. 1140; *United States of America v. Kuhrt*, No. 4:09-cr-00342-4 (S.D. Tex.), ECF No. 1140. On February 14, 2013, Lopez and Kuhrt each was sentenced to 240 months in prison for his role in the Ponzi scheme. *See id*. ECF Nos. 1212, 1213. As Plaintiffs allege in the present lawsuit:

>> Stanford Financial accountants Gilberto Lopez and Mark Kuhrt fabricated SIBL's financial statements using pre-determined returns on investments that were typically provided by Stanford or Davis. Lopez and Kuhrt used these fictitious returns to reverse-engineer the bank's financial statements and report investment income that SIBL did not actually earn.

---

[6] Specifically, Lopez and Kuhrt each was found guilty on Counts 1, 1s, 2-7, 21, 2s-7s, 8, 8s, 9-18, and 9s-11s of the Superseding Indictment against him.

FAC ¶ 68.  Accordingly, Gilbert Lopez and Mark Kuhrt should be designated as responsible third parties in this lawsuit.

4. On August 27, 2009, James Davis pleaded guilty to three counts of conspiracy, mail and wire fraud, and Obstruction of an Investigation of the Securities and Exchange Commission relating to the Ponzi scheme made the basis of this lawsuit. *See United States of America v. Davis*, No. 4:09-cr-00335 (S.D. Tex.), ECF No. 771.  On January 22, 2013, Davis was sentenced to 60 months in prison for his role in the Stanford Ponzi scheme. *See id*. ECF No. 89.  Davis admitted to repeatedly producing false financial statements in order to hide the true nature of the Ponzi scheme and to fraudulently induce investors to purchase SIBL CDs.  As Plaintiffs aver in this case, "Allen Stanford and Stanford Financial's CFO Jim Davis fabricated the nature, size, and performance of SIBL's purported investment portfolio."  FAC ¶ 68. Plaintiffs plead that Mr. Haymon is "responsible for all wrongdoing done by" Mr. Davis.  FAC ¶ 179.  Accordingly, James Davis should be designated as a responsible third party in this lawsuit.

5. Adams & Reese, LLP, Robert Schmidt, and James Austin, all were sued by the Receiver in this case for negligence and related causes of action,:

> The Lawyer Defendants' negligent acts or omissions breached that duty to STC, SGC, and Stanford Financial generally, and therefore to the Receiver. The Lawyer Defendants' breach of this duty proximately caused an injury to STC, SGC, and Stanford Financial generally, and therefore to the Receiver, by assisting Allen Stanford and his co-conspirators in misappropriating billions of dollars in assets from Stanford Financial companies, including at least $300 million in funds that STC should have been holding in SIBL CDs that were improperly diverted and subsequently misappropriated from Stanford Financial companies.

FAC ¶ 170.  Although the Court has dismissed the claims against Adams & Reese, LLP, Robert Schmidt, and James Austin, it did not do so on the merits of the claims against them, but rather ruled that the Plaintiffs' claims against them were time-barred.  That does not prevent them from being considered responsible third parties under Section 33.004.

6. Plaintiffs have identified the following Stanford-related entities as key players in the multi-billion-dollar Ponzi scheme made the basis of this lawsuit:

> (i) the Houston, Texas-based registered broker/dealer and investment adviser company Stanford Group Company ("SGC"); (ii) the Houston-based administrative company that serviced all the different companies, Stanford Financial Group Company; (iii) the Antiguan-based offshore bank Stanford International Bank Ltd. ("SIBL"); (iv) Stanford Trust Company (Louisiana) ("STC"); (v) Stanford Trust Company Ltd. (Antigua) ("STCL"); and (vi) the representative offices of Stanford Trust Company Ltd. (Antigua), d/b/a "Stanford Fiduciary Investor Services" ("SFIS"), that operated in Miami, Houston, and San Antonio. Stanford Financial was ultimately controlled and managed principally from Houston, Texas in the United States.

FAC ¶ 15. The Plaintiffs further plead that SGC, Stanford Financial Group, SIBL, STC, STCL, and SFIS, all were aided in perpetrating the Ponzi scheme by other Stanford-related entities, as follows:

> The entire Stanford Financial operation was fueled primarily by one product: Certificates of Deposit ("CDs") issued by SIBL, the Antiguan offshore bank wholly owned by Stanford himself. Clients who were introduced to Stanford Financial, whether in Houston, Miami, Caracas, or Mexico City, quickly learned that the main financial product peddled by the group was the SIBL CD. SIBL CDs were sold worldwide by a web of different Stanford Financial promoter companies, including SGC, STC and SFIS, whose function was to promote the sale of SIBL CDs. For example, to access additional investor capital in Latin America, Stanford Financial established representative offices in Colombia (Stanford Group Columbia a/k/a Stanford Bolsa y Banca), Ecuador (Stanford Group Ecuador a/k/a Stanford Group Casa de Valores, S.A. and Stanford Trust Company Administradora de Fondos y Fideicomisos, S.A.), Mexico (Stanford Group Mexico a/k/a Stanford Group Mexico S.A. de C.V. and Stanford Fondos), Panama (Stanford Group Panama a/k/a Stanford Bank Panama and Stanford Casa de Valores Panama), Peru (Stanford Group Peru a/k/a Stanford Group Peru S.A. Sociedad Agente de Bolsa), and Venezuela (Stanford Group Venezuela a/k/a Stanford Group Venezuela C.A., Stanford Bank Venezuela, and Stanford Group Venezuela Asesores de Inversion). These foreign offices were ultimately controlled and administered by Stanford Financial employees in Houston, Texas.

FAC ¶ 17. Accordingly, SGC, Stanford Financial Group, SIBL, STC, STCL, SFIS, Stanford Group Columbia a/k/a Stanford Bolsa y Banca, Stanford Group Ecuador a/k/a Stanford Group Casa de Valores, S.A. and Stanford Trust Company Administradora de Fondos y Fideicomisos,

S.A., Stanford Group Mexico a/k/a Stanford Group Mexico S.A. de C.V. and Stanford Fondos, Stanford Group Panama a/k/a Stanford Bank Panama and Stanford Casa de Valores Panama, Stanford Group Peru a/k/a Stanford Group Peru S.A. Sociedad Agente de Bolsa, and Stanford Group Venezuela a/k/a Stanford Group Venezuela C.A., Stanford Bank Venezuela, and Stanford Group Venezuela Asesores de Inversion, all should be designated as responsible third parties, pursuant to the Plaintiffs' pleading.

7.  Plaintiffs allege that Stanford Financial Group fraudulently induced investors to purchase the bogus SIBL CDs based on "financial statements prepared by a small accounting firm in Antigua, C.A.S Hewlett & Co., Ltd." FAC ¶ 27. Plaintiffs describe Hewlett's role in the Ponzi scheme as follows:

> SIBL's Antiguan auditor, Hewlett & Co., accepted "special" compensation from Stanford's secret "SocGen" "slush fund" account to fraudulently report SIBL's financial condition for use in SIBL's annual reports for some 20 years. Hewlett & Co. forwarded those fraudulent "audits" to Stanford Financial in Houston, Texas every year for 20 years with full knowledge that the fraudulent audits would be utilized in Stanford Financial's marketing materials to defraud depositors.

FAC ¶ 53. Accordingly, C.A.S Hewlett & Co., Ltd. should be designated as a responsible third party, pursuant to Plaintiffs' pleading.

8.  Plaintiffs also allege that the Government of Antigua, including Prime Minister Lester Bird was a crucial player in the implementation of the Ponzi scheme. In fact, "Stanford could not have perpetuated this fraud without his significant influence over the Antiguan Government. To gain this influence, Stanford used bribes to curry favor with Antiguan officials and build a safe haven for his Ponzi scheme." FAC ¶ 32.

> Lester Bird's government had basically allowed Stanford to "run things" in Antigua, and had been giving away Antiguan land to Stanford, including the Antiguan airport and contiguous land.
>
> By 1995, Stanford was really flexing his muscle in Antigua. The government even allowed Stanford to rewrite the banking laws that regulated SIBL. In June

      1995, Stanford began drafting offshore trust legislation for Antigua because Antigua had no such legislation in existence (despite the fact that Stanford had set up a "trust" company, STCL, in Antigua in 1991). Stanford's right hand and General Counsel at the time, Yolanda Suarez ("Suarez"), described how Stanford needed trust legislation for Antigua because he wanted to "develop Antigua as a platform" for offshore trust operations.

FAC ¶¶ 36-37. Accordingly Lester Bird should be designated as a responsible third party.

      9.      Plaintiffs allege that part of Stanford's take-over of the Antiguan government was the creation of the Antiguan Offshore Financial Sector Planning Committee. The Committee's purpose was to offer recommendations for reforming Antigua's offshore banking sector. See FAC ¶ 39. "The Committee formed a Task Force (the "Stanford Task Force") to (i) review all offshore banks licensed in Antigua to ensure they were legitimate, and (ii) evaluate Antigua's banking regulatory regime and make recommendations to address any weaknesses." *Id*. The Task Force, working closely with "Wrenford Ferrance, an Antiguan Government official that Prime Minister Bird nominated as the Government's representative and liaison to the Task Force," FAC ¶ 42, drafted extremely lax regulations which facilitated the Stanford Ponzi scheme. FAC ¶ 41. "The Task Force's members included three of Stanford Financial's outside lawyers; Kroll executives Tom Cash and Ivan Diaz; and several partners or associates from Stanford Financial's auditor in the United States, BDO Seidman, namely Michael Ancona, Jeffrey Balmer, Keith Ellenburg, and Barry Hersh." In addition, Plaintiffs allege that the Antiguan Minister of Finance, Molwyn Joseph, who was charged with overseeing SIBL, was also on the take from Allen Stanford, and did nothing to oversee SIBL. FAC ¶ 48. Likewise, Plaintiffs aver that another Antiguan official, Gaston Browne, corruptly helped advance Stanford's illicit schemes. FAC ¶ 48. Therefore, Wrenford Ferrance, Tom Cash, Ivan Diaz, Michael Ancona, Jeffrey Balmer, Keith Ellenburg, Barry Hersh, Molwyn Joseph, and Gaston Browne all should be designated as responsible third parties.

10. Plaintiffs allege that Mauricio Alvarado, Stanford Financial's General Counsel, participated in the scheme to deceive government banking regulators by, among other things, altering a legal opinion that was sent to the Louisiana Office of Financial Institutions ("OFI") and attempting to convince STC's board, including Mr. Haymon, to resist OFI's requests for documentation regarding the valuation off the SIBL CDs. FAC ¶¶ 113-14, 152. Plaintiffs plead that Mr. Haymon is "responsible for all wrongdoing done by" Mr. Alvarado. FAC ¶ 179. Accordingly, Mauricio Alvarado should be designated as a responsible third party in this lawsuit.

11. On June 18, 2009, Leroy King was indicted for his participation in the Stanford Pomnzi scheme. *See United States of America v. King.*, No. 4:09-cr-00342-5 (S.D. Tex.). In the First Amended Complaint in this case, Plaintiffs allege that King, Allen Stanford's good friend and former head of Antigua's financial regulator, the Financial Services Regulatory Commission (the "FSRC"),

> accepted bribes from Stanford and/or his associates in return for his assurance that the FSRC "looked the other way" and would not properly perform its regulatory functions or supervise SIBL. King even entered into a bizarre "blood brother" ritual with Allen Stanford in which he agreed to forever be bound to Allen Stanford. As part of this blood-brother relationship and bribery, King became Stanford's regulatory spy and "inside man" who relayed information to Stanford concerning the SEC's investigations of Stanford Financial and SIBL from 2005 all the way until 2009. This was all just part of the broader conspiracy to keep the Ponzi scheme alive by evading and obstructing regulatory oversight of SIBL's activities, at every turn, and in every country.

FAC ¶ 52. Plaintiffs plead that Mr. Haymon is "responsible for all wrongdoing done by" Mr. King. FAC ¶ 179. Accordingly, Leroy King should be designated as a responsible third party in this lawsuit.

12. Rebecca Hamric was an attorney at Stanford Financial who, Plaintiffs allege, drafted a fake letter for the signature of Leroy King which was submitted to the Louisiana OFI

stating that SIBL was "in compliance with all regulatory guidelines and all applicable rules and regulations." FAC ¶ 144. Hamric is alleged to have done the same thing for Hewlett & Co.:

> She drafted a fake letter that stated exactly what she and Stanford Financial's other employees wanted it to state, and the auditor was supposed to sign and deliver the letter to the OFI. Hewlett & Co. signed the fraudulent letter that Hamric prepared and sent it to the OFI on April 10, 2008.

FAC ¶ 145. Plaintiffs plead that Mr. Haymon is "responsible for all wrongdoing done by" Ms. Hamric. FAC ¶ 179. Accordingly, Rebecca Hamric should be designated as a responsible third party in this lawsuit.

13.     Plaintiffs allege that Lena Stinson, Stanford Financial's Director of Global Compliance, participated in the deception of the Louisiana OFI by Hamric and others. FAC ¶ 146. Plaintiffs plead that Mr. Haymon is "responsible for all wrongdoing done by" Ms. Stinson. FAC ¶ 179. Accordingly, Lena Stinson should be designated as a responsible third party in this lawsuit.

14.     Plaintiffs allege that SIBL's President, Juan Rodriguez-Tolentino, participated in the deception of the Louisiana OFI by Hamric and others. FAC ¶ 145-46. Plaintiffs plead that Mr. Haymon is "responsible for all wrongdoing done by" Mr. Rodriguez-Tolentino. FAC ¶ 179. Accordingly, Juan Rodriguez-Tolentino should be designated as a responsible third party in this lawsuit.

15.     Plaintiffs allege that Bernie Young, SGC's Director of Compliance, was responsible for STC's "misleading and obstructive responses to the OFI," and claimed that "Antiguan privacy laws prohibited SGC from producing any documents to satisfy the OFI's request to examine SIBL's portfolio." FAC ¶ 139, 142, Plaintiffs plead that Mr. Haymon is "responsible for all wrongdoing done by" Mr. Young. FAC ¶ 179. Accordingly, Bernie Young should be designated as a responsible third party in this lawsuit.

16. The Receiver filed *Janvey v. Juan Alberto Rincon*, No. 3:11-cv-01659 (N.D. Tex.), alleging that Rincon served as the Executive Vice President and Chief Financial Officer for Stanford Group Company (SGC), the Stanford entity primarily responsible for marketing SIB CDs in the United States. According to the Receiver, Rincon, as CFO of this company and as a CPA, either knew or should have known that SGC was being propped up by proceeds from the sale of SIB CDs and that the Stanford entities were being operated as a massive fraud. Indeed, former Stanford Financial Group Chief Financial Officer James Davis testified under oath that Rincon knew that depositor funds were being illegally diverted from SIB to fund Stanford's other companies, including SGC.Comisionista de Bolsa (Colombia); Stanford Casa de Valores, S.A. (Panama); and Stanford Group Casa de Valores, S.A. (Ecuador). *See id*. ECF No. 16. Accordingly, Juan Alberto Rincon should be designated as a responsible third party.

17. The Receiver brought *Janvey v. Proskauer Rose, LLP, Chadbourne & Parke, LLP, and Thomas V. Sjoblom*, 3:12-cv-00644, alleging that the Defendants participated in the Ponzi scheme orchestrated by the Stanford companies, principally through Sjoblom's efforts to oppose the SEC's investigation of the Stanford enterprise. Plaintiffs assert the following causes of action against these defendants: negligence; aiding, abetting or participation in breaches of fiduciary duties, fraudulent transfers, and conversion; civil conspiracy; negligent retention/supervision. *See id*. ECF No. 44. Based on the Receiver's allegations, Proskauer Rose, LLP, Chadbourne & Parke, LLP, and Thomas V. Sjoblom should be designated responsible third parties.

18. In *The Official Stanford Investors Committee v. BDO USA, LLP, BDO Global Coordination B.V., and Brussels Worldwide Services BVBA*, No. 3:12-cv-1447 (N.D. Tex.), the Committee brought claims for professional negligence and aiding and abetting breaches of

fiduciary duties against various BDO entities, as Stanford Financial Group's accountants and auditors, alleging, in part, as follows:

> BDO USA provided critical services to Stanford Financial Group for over a decade. For example, BDO USA audited the annual financial statements of SGC, the Texas-based broker/dealer and investment advisor that recommended and sold SIBL CDs to investors. BDO USA also audited the annual financial statements of STC, which served as trustee and custodian to hold the SIBL CDs that SGC sold for its investors' IRA accounts. In addition, BDO USA audited the annual financial statements of Stanford Group Holdings ("SGH"), a holding company for the broker/dealer arm of Stanford Financial Group, including SGC and STC. Notably, BDO USA also provided other critical services to SIBL, the offshore bank that issued the CDs.
>
> Despite the pervasive fraud that infected Stanford Financial Group's operations, BDO USA repeatedly issued unqualified audit opinions on its Stanford Clients' annual financial statements. BDO USA's audit opinions on SGC's financial statements were critical to Stanford Financial Group's success.

*Id*. ECF No. 1, at ¶¶ 72-73. Accordingly, BDO USA, LLP, BDO Global Coordination B.V., and Brussels Worldwide Services BVBA all should be designated as responsible third parties.

19. In *The Official Stanford Investors Committee v. BDO USA, LLP,l BDO Global Coordination B.V., and Brussels Worldwide Services BVBA*, No. 3:12-cv-1447 (N.D. Tex.), the Committee alleges that the following officers and directors of SGC and STC "breached their fiduciary duties by causing the Stanford Clients and Stanford Financial Group to engage in an illegal Ponzi scheme that enabled Allen Stanford and his co-conspirators to misappropriate billions of dollars from Stanford Financial Group companies." *Id*. at ¶ 101. The SGC and STC officers and directors named by the Committee in Civil Action No. 3:12-cv-1447 as having participated in the Ponzi scheme are, according to the Complaint in that case:

> (i) Danny Bogar, who served as President in at least 2005; (ii) Executive Director Jay Comeaux; (iii) Senior Vice President and Director of Financial Planning Jason Green; (iv) Senior Vice President – Risk Management Michael Koch, who served in at least 2007; (v) Senior Vice President – Director of Compliance R.E. Poppell, who served in at least 2006; (vi) Executive Vice President and Chief Financial Officer A.J. Rincon; (vii) Executive Vice President and Chief Financial Officer Charles Weiser, who served in at least 2008; (viii) Chief Compliance

> Officer Bernard Young, who served in at least 2008; (ix) Managing Director Jay Zager; and (x) Director of Compliance Rhonda Lear.  The STC directors and officers who breached their fiduciary duties include but are not limited to: (i) Director Claude Reynaud, who served from 2000 until 2009; (ii) ; (iv) J.D. Perry, who served as a Director from 1998 until 2006, and President in at least 2006; (v) Louis Fournet, who served as a Director from 2007 until 2008, and President in 2006; (vi) Director Jay Comeaux, who served from 1998 until 2008; (vii) Director Zack Parrish, who served from 2006 until 2009; (viii) Director Daniel Bogar, who served from 2004 until 2009; (ix) Director Jason Green, who served from 1998 until 2008; (x) President Anthony D'Aniello, who served in at least 2005 and 2007; and (xi) Senior Vice President and Senior Trust Officer Joe Klingen, who served in at least 2007.

*Id*.  Accordingly, Danny Bogar, Jay Comeaux, Jason Green, Michael Koch, R.E. Poppell, A.J. Rincon, Charles Weiser, Bernard Young, Jay Zager, Rhonda Lear, J.D. Perry, Louis Fournet, Zack Parrish, Joe Klingen, and Anthony D'Aniello, all should be designated as responsible third parties.

20. In *The Official Stanford Investors Committee, Phillip A. Wilkinson, and Horacio Mendez v. Adams & Reese, LLP, James Austin, Breazeale, Sachse & Wilson, LLP, Claude Reynaud, J.D. Perry, Rebecca Hamric, Michael Contorno, Louis Fournet, Jay Comeaux, Cordell Hamon, Thomas Frazer, Zack Parrish, Daniel Bogar and Jason Green*, 3:11-cv-00329 (N.D. Tex.), the Committee alleges that the Defendants knew of numerous "red flags" indicating corrupt and illegal activities at various Stanford entities, but breached their fiduciary duties by doing nothing to stop or hinder the Stanford Ponzi Scheme:

> [T]he red flags were everywhere and yet the Defendants continued to provide services in furtherance of the STC/IRA portion of the Stanford Ponzi Scheme. While the deceptive machinations of Allen Stanford and his co-conspirators certainly dictated the course of this fraudulent scheme, the Defendants' purportedly "independent" legal and fiduciary services fueled the engine for that scheme. Without the Defendants' complicity and participation, the STC/IRA portion of the Stanford Ponzi Scheme would not have survived, and hundreds of innocent IRA account holders would not have lost over $300 million.

*Id*., ECF 19, at ¶ 147.  Accordingly, Breazeale, Sachse & Wilson LLP, Adams & Reese, LLP, James Austin, J.D. Perry, Rebecca Hamric, Michael Contorno, Louis Fournet, Jay Comeaux,

Zack Parrish, Daniel Bogar, and Jason Green, all should be designated as responsible third parties.[7]

21. In *Janvey v. James K. Conzelman and Lionel C. Johnson*, 3:11-cv-02788 (N.D. Tex.), the Receiver alleges that the Defendants (former Senior Vice Presidents of Government Affairs at Stanford Financial Group Company) knew or should have known of the fraudulent nature of the Stanford enterprise and did nothing to stop it:

> Conzelman and Johnson were both aware that at least one senator and a national political committee refused to accept donations from the Stanford Parties because of the ongoing SEC investigation into the Stanford scheme. Indeed, Stanford tasked Conzelman and Johnson with convincing such politicians and committees to accept donations from the Stanford Parties. Both were also aware of concerns raised by prospective Stanford clients regarding the minimal regulatory oversight of SIB. They also participated in discussions with Stanford's upper management regarding how to respond to allegations of illegal activities raised by two former Stanford employees in July 2008. Additionally, as Senior Vice Presidents of Government Affairs, Conzelman and Johnson were officers—and thus insiders—at SFGC. Conzelman and Johnson both reported directly to Yolanda Suarez, Chief of Staff of Stanford Financial Group Company as well as Secretary and member of the board of directors for Stanford Group Holdings, Inc., and both Conzelman and Johnson were in regular contact with the highest levels of Stanford management. For all of these reasons, Conzelman and Johnson either knew or should have known of the fraudulent nature of the Stanford enterprise.

*Id.*, ECF No. 1, at ¶ 40. Accordingly, James K. Conzelman and Lionel C. Johnson should be designated as responsible third parties.

## CONCLUSION

For the reasons set forth above, Cordell Haymon respectfully requests leave to replead in order to designate the following persons as responsible third parties pursuant to Texas Civil Practices and Remedies Code § 33.004: R. Allen Stanford, Laura Pendergest-Holt, Gilbert Lopez, Mark Kuhrt, James Davis, Adams & Reese, LLP, Robert Schmidt, James Austin, Stanford Group Company, Stanford Financial Group, Stanford International Bank, Ltd., Stanford

---

[7] Mr. Haymon and Mr. Frazer were dismissed from this lawsuit. Mr. Frazer passed away on July 4, 2012.

Trust Company (Louisiana), Stanford Trust Company, Ltd. (Antigua) d/b/a Stanford Fiduciary Investor Services, Stanford Group Columbia a/k/a Stanford Bolsa y Banca, Stanford Group Ecuador a/k/a Stanford Group Casa de Valores, S.A., Stanford Trust Company Administradora de Fondos y Fideicomisos, S.A., Stanford Group Mexico a/k/a Stanford Group Mexico S.A. de C.V., Stanford Fondos, Stanford Group Panama a/k/a Stanford Bank Panama and Stanford Casa de Valores Panama, Stanford Group Peru a/k/a Stanford Group Peru S.A. Sociedad Agente de Bolsa, Stanford Group Venezuela a/k/a Stanford Group Venezuela C.A., Stanford Bank Venezuela, Stanford Group Venezuela Asesores de Inversion, C.A.S. Hewlett & Co., Ltd., Lester Bird, Wrenford Ferrance, Tom Cash, Ivan Diaz, Michael Ancona, Jeffrey Balmer, Keith Ellenburg, Barry Hersh, Molwyn Joseph, Gaston Browne, Mauricio Alvarado, Leroy King, Rebecca Hamric, Lena Stinson, Juan Rodriguez-Tolentino, Juan Alberto Rincon, Proskauer Rose, LLP, Chadbourne & Parke, LLP, Thomas V. Sjoblom, BDO USA, LLP, BDO Global Coordination B.V., Brussels Worldwide Services BVBA, Daniel and/or Danny Bogar, Jay Comeaux, Jason Green, Michael Koch, R.E. Poppell, A.J. Rincon, Charles Weiser, Bernard and/or Bernie Young, Jay Zager, Rhonda Lear, J.D. Perry, Louis Fournet, Zack Parrish, Joe Klingen, Anthony D'Aniello, Breazeale, Sachse & Wilson LLP, Michael Contorno, Louis Fournet, Jay Comeaux, Zack Parrish, Jason Green, James K. Conzelman, and Lionel C. Johnson.

Respectfully submitted,

JACKSON WALKER L.L.P.

__*Charles L. Babcock*_____
Charles L. Babcock
Federal Bar No.: 10982
Email: cbabcock@jw.com
Kurt Schwarz
Texas Bar No.: 17871550
Email: kschwarz@jw.com
901 Main Street, Suite 6000
Dallas, Texas 75202
Telephone: (214) 953-6000
Telecopier: (214) 953-5822

Joel R. Glover
State Bar No. 24087593
Email: jglover@jw.com
1401 McKinney, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4200
Telecopier: (713) 752-4221

**DEFENDANT CORDELL HAYMON'S MOTION FOR LEAVE TO DESIGNATE RESPONSIBLE THIRD PARTIES AND BRIEF IN SUPPORT – Page 18**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Motion for Leave to Designate Responsible Third Parties was served upon all counsel of record via the Court's ECF system on December 16, 2013.

                 __*Kurt Schwarz*_____

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that on December 6, 2013, the undersigned conferred with counsel for Plaintiffs regarding the relief requested by the foregoing motion. On December 12, 2013, Plaintiffs' counsel stated that he did not agree to the requested relief, so the motion is presented to the Court for determination.

                 __*Kurt Schwarz*_____